## A93A0140. WELLS v. THE STATE.
(430 SE2d 611)

BIRDSONG, Presiding Judge.

Dennis Lee Wells appeals his judgment of conviction of rape and his sentence. Appellant was found not guilty of solicitation of sodomy during the same incident.

Appellant asserts evidence insufficiency and also enumerates three errors pertaining to the admission of certain similar transaction evidence.

Appellant and the victim agree that in late August 1990, during the course of a date, appellant engaged in an act of sexual intercourse with the victim; however, appellant testified the act was consensual while the victim testified that the rape was not consensual, was completed against her will, and that, although she resisted to the best of her ability, her resistance was forcibly overcome by appellant. There exist obvious inconsistencies between the testimony of the victim and appellant not only as to the main issue of consent but as to the circumstances leading to their date, to the decision to attend the party at the house of the victim's friend, to the degree, if any, of affection displayed by the victim toward appellant at the party, the degree of alcohol consumed by the victim, and the circumstances leading to the act of intercourse after the party. Medical evidence revealed no corroborating evidence of violence to the victim's body; appellant's clothing was not torn. However, appellant had four scratch marks on his

shoulder, tending to corroborate that portion of the victim's testimony that she thought she had clawed appellant's shoulder when her hand was freed temporarily during her resistance. *Held*:

1. On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Grant v. State*, 195 Ga. App. 463 (1) (393 SE2d 737). Reviewing the transcript in this light reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offense of rape as convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Appellant asserts the trial court erred in admitting evidence of an alleged similar transaction. Regarding the similar transaction incident, a female witness, aged 27, testified before the jury that, in February 1990, while working, she received three anonymous obscene phone calls. Each time the caller would ask her to perform oral sex or to allow oral sex to be performed upon her, and discussed other sexual activities using vulgar language. It appears the caller also requested anal sex. The caller obviously knew where the witness worked and the places she frequented for lunch. Even after talking obscenely to the witness, the caller stated he wanted a face-to-face confrontation so he could meet her and bring her things at her office. Following the third obscene phone call, she received a dozen roses with a card from the caller with X's and O's on the bottom. She informed the police. While the police were at her office, another call was received and the police advised her to arrange a meeting at her office with the caller. She complied. (At a previous out-of-court hearing, the witness testified that an officer witnessed this meeting and that the meeting was taped; she also testified that before appellant left her office she informed appellant she was going to charge him with making obscene calls, but he replied that she could do nothing and that she did not know the law.) The caller arrived at her office and admitted making the calls to her; she told appellant not to see her again. He acknowledged that he had no chance of a relationship with her and departed her office only to call a few minutes later and ask her for a date. The next day she observed appellant driving by her twice, waving and smiling at her; she informed the business she went into and they called the police to escort her back to her office.

(a) This case was tried before the opinion was issued in *Williams v. State*, 261 Ga. 640 (409 SE2d 649), establishing certain procedures and requiring certain express findings on the record before similar transaction evidence can be admitted. As appellant has not cited *Williams*, supra, or its progeny, and has not advanced any argument in its appellate brief that the new affirmative findings requirements of

*Williams*, supra, were not adequately complied with, any determination of the *Williams* requirements is not appropriate on appeal. See Court of Appeals Rule 15 (c) (2); *McGaha v. State*, 204 Ga. App. 248 (2) (418 SE2d 802); *Boatright v. State*, 192 Ga. App. 112, 119 (10) (385 SE2d 298). Moreover, we note that the evidence presented by the State at the out-of-court hearing conducted just prior to the commencement of trial was sufficient for the trial court to have concluded affirmatively on the record that each of the requirements of *Williams*, supra, had been satisfied. Compare *Jefferson v. State*, 206 Ga. App. 544 (4), n. 1 (425 SE2d 915). Harm as well as error must be established to necessitate case reversal. *Robinson v. State*, 229 Ga. 14, 15 (189 SE2d 53).

Appellant's identity as the perpetrator of the alleged similar transaction is not contested, and it has not been enumerated as an error that the State failed to prove appellant's identity as the perpetrator of the similar transaction incidents in question. Accordingly, this issue is not before us on appeal. See, e.g., *Smith v. State*, 192 Ga. App. 298 (384 SE2d 459); *Roberts v. Cotton States Mut. Ins. Co.*, 186 Ga. App. 371, 373 (367 SE2d 272). Likewise not before us on appeal is any issue regarding the adequacy of any limiting instructions given to the jury during the course of the trial regarding jury consideration and use of the similar transaction evidence.

(b) Appellant asserts the trial court erred by admitting similar transaction evidence as it was not sufficiently similar and lacked logical connection with the offenses for which appellant was being tried.

In support of his contention appellant cites and relies upon *Wimberly v. State*, 180 Ga. App. 148 (348 SE2d 692) and makes passing reference to *Larkins v. State*, 230 Ga. 418 (197 SE2d 367). That portion of *Larkins*, supra, cited in *Wimberly*, supra, for the proposition that the rule allowing admissibility of similar transaction evidence does not apply in rape cases where the only issue for the factfinder is whether the act of sexual intercourse was consensual as, in such circumstances, malice, intent, motive, etc. is "not relevant" (*Wimberly*, supra at 150 (1)) in effect was overruled in *Thomas v. State,* 234 Ga. 635, 636 (217 SE2d 152) and *Hunt v. State*, 233 Ga. 329, 331 (211 SE2d 288). See *Franklin v. State*, 201 Ga. App. 147, 148 (1) (410 SE2d 451), citing *Taylor v. State*, 195 Ga. App. 634, 635 (394 SE2d 597). Accordingly, we find that *Wimberly* is not controlling in the disposition of this matter. Rather, the current general rule as to the admissibility of similar transaction evidence is that announced in *Williams*, supra; with the added proviso that "[t]he exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses." *Johnson v. State*, 242 Ga. 649, 653 (3) (250 SE2d 394); *Oller v. State*, 187 Ga. App. 818, 821 (2) (371 SE2d 455). (For reasons stated above, the issue

of procedural compliance with the requirements of *Williams*, supra, is not before us for appellate adjudication.)

The indictment returned against appellant averred not only the offense of rape but also averred the offense of solicitation of the same female victim on the same date to perform oral sodomy upon him. The trial court admitted similar transaction evidence of appellant's solicitation of another woman to perform oral sodomy upon him.

The victim in the case at bar testified as follows: She is in her early twenties and is attending college. At the time of the incident she was working at a hospital as a nurse. She had left the hospital to pick up an order of food for the nurses on duty. Appellant, whom she had never met before, followed her out of the restaurant and offered to help her put her items in her car. Appellant asked the victim to come to his motel room for a drink when she got off work, but she declined. Appellant persisted in his attempt to go out with the victim so she gave her phone number to him at the hospital. Appellant called that night and again asked her to come over for a drink. The victim suggested appellant call her the next evening in an attempt to stall for time. Ultimately, she agreed to go with appellant to a social gathering, but ended up taking appellant to her friend's house. Appellant could not keep his hands off the victim that evening and, after he had several drinks, he even attempted to follow her into the bathroom. The victim got into appellant's car to be driven home but on the way appellant turned his car around and went to his motel to obtain something from his room. Appellant invited the victim into his room. She declined his offer, which he had repeated nine or ten times, until he eventually threatened not to take the victim home until she came into his room. Although she was scared, the victim finally agreed to go inside for a few minutes. Once inside appellant locked the door, pushed the victim onto the bed and forcibly engaged her in an act of intercourse without her consent and against her will. Appellant "talked through the whole thing," and the victim "never heard such nasty language in all [her] life." Appellant told her that she knew she wanted this, that he would spank her if she was not still, and that if she did not quit squirming, "he was going to make [the victim] perform oral sex on him." Later when the victim started fighting him again, appellant "said that he was going to perform anal sex on [her] and that would hurt." During the incident appellant also performed oral sex on the victim and "made" her utilize vulgarization and in such manner express vocally that she wanted him to engage in such conduct with her. Appellant had sex with her four or five different times, as he would engage in intercourse, stop and "run his mouth, and then he would continue, run his mouth again through the whole thing, talking nasty." At the conclusion of the episode, appellant made the victim thank him. He also asked her how she was going to

prove she had been raped. Appellant subsequently drove the victim to her friend's home, "acted like nothing in the world had happened," and asked her if she wanted to go out with him on Monday. After the victim went into her friend's home, appellant went down the dirt road, turned off his car lights, and "drove back by real slow."

To meet the "similarity" requirement for the admission and use of similar transaction evidence, there must be an affirmative showing by the State both before the trial judge and, in the event such evidence is admitted, a presentation of evidence to the trier of fact establishing (in addition to certain other separate requirements not here at issue) that the connection and/or similarity between that offense or act and the crime charged is such that proof that the accused committed the former tends to prove that the accused also committed the latter. *Williams,* supra; *Oller,* supra. In this regard, there is no requirement that a previous offense or act be identical to the one being prosecuted in order to make it admissible. *Blige v. State,* 205 Ga. App. 133, 135 (2) (421 SE2d 547); *Brown v. State,* 197 Ga. App. 155, 156 (398 SE2d 34).

The criminal incident for which appellant was pending trial and the alleged similar transaction occurred within a reasonable time of each other, that is, approximately six months apart. In both instances the victims were young females. (In an offer of proof outside the presence of the jury, the prosecutor informed the trial judge that there was a similarity in the two criminal incidents for various reasons, including, inter alia, that both victims were white females in their early twenties. Neither the race nor skin color of the females was testified to before the jury; but, the jury would be able to view the witnesses as they testified.) In both cases, the victims were approached by appellant, who was a stranger to them, without benefit of a formal introduction. In both instances, appellant was quite persistent in his attempts to contact the victims, as evidenced by his phone calls and requests for dates. In both instances, appellant vocalized his willingness to engage in acts of oral sex with the victims. There exists some evidence that appellant also vocalized a willingness to engage in acts of anal sex. In both cases, appellant asked the victims for a date after having confronted them and having used obscene language. In both cases, appellant in essence informed the victims that they would not be able to prove that he committed any criminal misconduct, and tended to act as though nothing unusual had occurred between himself and the victims. Furthermore, in both instances, appellant's demonstrated bent of mind was to talk to the victims using vulgar and obscene language, and either demand or attempt to entice the female to talk vulgarly to him. In fact, in determining appellant's modus operandi, bent of mind, or motivation, a substantial connection exists between the repeated making of obscene phone calls and his

repeated use of obscene and vulgar words each separate time he was penetrating his rape victim. Compare *Henderson v. State*, 204 Ga. App. 884, 887 (2) (420 SE2d 813) (in all but one incident defendant was totally silent during the attack or said two or less words). As the rule regarding the admissibility of similar transaction evidence is most liberally construed in cases involving sexual offenses (*Oller*, supra, and cases cited therein), we find, without merit, appellant's enumeration of want of sufficient similarity or logical connection. Compare *Watson v. State*, 180 Ga. App. 82 (348 SE2d 557).

(c) Appellant, citing *Tuzman v. State*, 145 Ga. App. 761 (244 SE2d 882), asserts the trial court erred in allowing similar transaction evidence because it failed to meet the relevancy requirements of Georgia law; its probative value was unfairly outweighed by its prejudicial impact. We disagree.

Balancing the probative value of the similar transaction evidence against its prejudicial impact, in view of the affirmative showing of record of the nature of the logical connection or similarity of such evidence to the offenses for which appellant was then being tried (*Oller*, supra at 819 (2); accord *Hammock v. State*, 201 Ga. App. 614, 616 (4) (411 SE2d 743); *Pinson v. State*, 201 Ga. App. 555 (411 SE2d 564); *Brown*, supra; *Smith v. State*, 182 Ga. App. 740 (1) (356 SE2d 723)), we find that the probative value of such evidence outweighed its prejudicial impact. Further, the logical connection or similarity between the similar transaction evidence and the two offenses for which appellant was being tried was not weakened by the jury's subsequent acquittal of appellant for solicitation of sodomy. For reasons addressed above, appellant's reliance on *Wimberly*, supra, in an attempt to establish that the similar transaction evidence had no relevancy is not persuasive.

(d) Appellant, citing *Story v. State*, 196 Ga. App. 590 (396 SE2d 547), asserts the trial court erred in admitting the similar transaction evidence because the State failed to provide proper notice of its intention to introduce such evidence as required by USCR 31.3. Appellant concedes that written notice was given but asserts such notice was defective as the evidence introduced at trial far exceeded the scope of the notice given.

The notice pertinently stated: "The State further alleges that [appellant] has solicited sodomy from another woman on a previous occasion. The State contends that on February 28, 1990, [appellant] did solicit [the named specific transaction victim] to perform an act of sodomy, to-wit: to perform oral sex upon him, in the County of Beaufort, state of South Carolina. . . . The State believes that the currently indicted offenses and the prior transaction[ ] are factually similar and that evidence of the prior transaction[ ] would be helpful to the jury's determination of the issues in the currently indicted of-

fenses."

The similar transaction victim testified, as above summarized, to numerous activities of appellant beyond the mere receiving of an obscene phone call on February 28, 1990. This testimony, in addition to discussing the receipt of this particular phone call by a caller who she later determined was appellant, included reference to conduct of appellant both before and after February 28. However, all of the testimony either was part of the res gestae surrounding the obscene conduct of appellant or was so closely connected therewith as to be inextricably separated therefrom in determining whether there existed a logical connection or sufficient similarity between the similar transaction incident and the incident on which the current charges against appellant were based.

Appellant refers in his brief to certain testimony concerning a vandalized car without providing any citation to the page in the record where such testimony is located. Examination of the testimony of the similar transaction witness does not reveal that she testified before the jury regarding a vandalized car, and we will not cull the record in search of alleged error. *Talley v. State*, 200 Ga. App. 442, 446 (4) (408 SE2d 463). The only apparent reference to the witness' car being vandalized is contained within her reported testimony in an out-of-court hearing. At the onset, we note "[t]he trial judge is presumed to know the law and to be capable of separating admissible grains of evidence from inadmissible chaff." *Rowe v. Rowe*, 195 Ga. App. 493 (2) (393 SE2d 750). In any event, we find the State did not exceed the reasonable scope of its notice when the witness gave this particular testimony in an out-of-court hearing and not within the presence of the triers of fact.

*Story*, supra, is factually distinguishable from this case and is not controlling.

Uniform Superior Court Rule 31.3 (B), pertinently provides that "[t]he notice shall be in writing, served upon the defendant's counsel, and shall state the transaction, date, county, and the name[s] of the victim[s] for each similar transaction or occurrence sought to be introduced." Review of the notice reveals that it includes all of these elements; the only question remaining is whether, by asserting that oral sodomy was solicited on February 28, 1990, appellant was limited to presenting only that portion of the evidence pertaining to the similar transaction incident which occurred on that particular date. We conclude that the State was not so limited.

Uniform Superior Court Rule 31.3 (B) requires that notice be in a specific form to ensure that the State *actually* notifies the defendant of its intent to use *certain* evidence so that the defendant will have a *meaningful opportunity* to rebut that evidence. *Maxwell v. State*, 262 Ga. 73, 74 (2a) (414 SE2d 470). The rule also is designed to provide a

criminal defendant with *fair and adequate* notice of the State's intention to utilize similar transaction evidence so that questions as to the admissibility of such evidence can be resolved before trial; and the purpose of the length of the notice period is to allow defendant the opportunity to investigate the validity, relevancy, and other aspects of admissibility of the prior offenses. *Devane v. State*, 183 Ga. App. 60, 62 (2a) (357 SE2d 819). We find that the notice was adequate to fulfill all these requirements, and that the reference only to an obscene phone call on the date of February 28, 1990, when viewed in totality with the other evidence provided in the notice, posed no fair risk of misleading the appellant regarding that prior conduct of his which was sought to be introduced as similar transaction evidence. Compare *Eidson v. State*, 182 Ga. App. 321, 322 (2) (355 SE2d 691). The written notice reasonably placed appellant on actual notice not only of the State's intent to introduce the fact an obscene call was received by the victim on the date specified, but as to all prior and subsequent relevant acts committed by appellant in the course of and pertaining to this *continuing incident* involving the same identified victim, particularly those acts that might tend to establish the identity of the caller as appellant or to establish the logical connection or similarity of the course of conduct involved in the prior transaction with that of one or more of the offenses for which appellant was currently charged. Moreover, the fact that appellant had not entered a plea of guilty to a criminal charge arising out of this prior conduct by February 28, 1990, is of no legal significance in the adjudication of this issue. "It is well settled that there need not be a criminal charge or conviction relating to a similar offense for it to be admissible." *Randolph v. State*, 198 Ga. App. 291, 292 (2) (401 SE2d 310). Thus, the date provided in the notice could not mislead appellant into believing that the conduct involved could not be introduced merely because he had not yet been charged or convicted as of February 28, 1990.

Assuming arguendo the notice was technically deficient in failing to aver that the conduct occurred on or about February 28, 1990, or during the month of February 1990, nevertheless we are satisfied that the notice was at least in substantial compliance with the notice requirement of USCR 31.3 (B) and did not deprive appellant of procedural due process in any manner. Cf. *Sweatman v. State*, 181 Ga. App. 474 (352 SE2d 796).

Further, the record reflects that several weeks before the jury was selected in this case, and before the out-of-court hearing was conducted wherein the similar transaction victim testified under oath and subject to cross-examination, another trial judge had conducted a similar transaction evidence hearing at which "the State made in proffer" the expected similar transaction evidence sought to be introduced. The State asserted on the record at trial that accordingly any

deficiency in the notice had been cured, and stated without contradiction by the defense that "I also stated in my place back a few weeks ago here in court what we expected the evidence to be, and finally yesterday [the similar transaction victim] testified." Thus, the record affirmatively shows that appellant had actual notice as to the scope of the similar transaction evidence several weeks before trial. Compare *Devane v. State*, supra at 62 (2b). It is well established that, although the USCR 31.3 (B) clearly presupposes that the State's failure to comply with the rule will result in harm to the defendant, "the State can avoid the consequences of its failure to adhere to the rule by showing that the defendant had the requisite notice in spite of the State's failure." *Todd v. State*, 189 Ga. App. 538, 539 (1) (376 SE2d 917).

Further, in this case, no transcript of the earlier hearing has been forwarded for our review as to the issue of actual notice. Thus, for this additional reason, we must presume the trial court did not err in its ruling regarding the adequacy of the written notice pertaining to the admission in evidence of similar transaction evidence. See *Ross v. State*, 195 Ga. App. 624, 626 (3) (394 SE2d 418).

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED MARCH 12, 1993 —
RECONSIDERATION DENIED MARCH 31, 1993

*Duffy & Feemster, Dwight T. Feemster, Ronald K. Thompson, Jo Beth Gosdeck*, for appellant.

*Richard A. Malone, District Attorney, Melvin E. Hyde, Jr., Anne L. Latta, Assistant District Attorneys*, for appellee.